IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CS ASSETS, LLC ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| H&H REAL ESTATE DEVELOPMENT, ) | |
| INC., et al. ) | Case No.: CV-04-HS-2260-S |
| ) | |
| Defendants ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN MOSHER and ) | |
| BINNACLE MANAGEMENT, INC. ) | |
| ) | |
| Third Party Defendants ) | |

**MEMORANDUM OPINION ON PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The case is before this Court on the Motion for Summary Judgment by the Plaintiff CS Assets, LLC (doc. 9). The Plaintiff brought this action seeking to collect on a note that is in default. The Plaintiff bases its motion upon the pleadings and upon the affidavit of John C. Mosher and the documents attached thereto.

The facts of this case are not in dispute. The Defendants are H&H Real Estate Development, Inc. ("H&H Development"), H&H Real Estate Partnership, Wee Care Academy, and Wee Manage, Inc., Elias Hendricks, Jr., and Gaynell Hendricks. Elias Hendricks and Gaynell Hendricks are majority owners of the corporate defendants.

The Defendant H&H Development owns real property located in Birmingham, Alabama referred to by the parties as the "Transportation Building." As part of a plan to convert the building into condominium units, in 1996, H&H Development executed a mortgage note with Colonial Bank in the amount of $1.6 million. (*See* Affidavit of John C. Mosher ("Mosher Aff"), ex. G.) In 2002,

Colonial Bank consolidated the debts of H&H Development into a renewal promissory note ("Renewal Note") in the original principal amount of approximately $2.2 million. (*See* Mosher Aff., ex. A.)  The Transportation Building was listed as collateral in both transactions.  Furthermore, the "Renewal Note" was guaranteed by the Defendants H&H Real Estate Partnership, Wee Care Academy, and Wee Manage, Inc., Elias Hendricks, Jr., and Gaynell Hendricks.  (*See* Mosher Aff., exs. B-F.).

The Renewal Note provided that the note would mature and come due as of June 20, 2003.  However, when the note matured and became due to be paid in full, the Defendants failed to make payment.

On December 23, 2003, Colonial Bank assigned the Renewal Note to the Plaintiff CS Assets.  (*See* Mosher Aff., ex. H.)  By this time, the note was in default.  In response to the default, CS Assets and the Defendants executed a Forbearance Agreement.  (*See* Mosher Aff., ex. I.)  Under the Forbearance Agreement, CS Assets agreed to forebear from exercising its rights and remedies against the Defendants until March 31, 2004.  (*See* Mosher Aff., ex. I ¶2.)  The agreement also contained the following provision:

> 4.     Release of All Claims
> To the extent any claim exists as of the date hereof, the Obligors, and each of them on behalf of themselves and their respective heirs, successors, and assigns, hereby forever and irrevocably release the Lender and its respective officers, representatives, agents, attorneys, employees, successors and assigns, from any and all claims, demands, damages, suits, cross-complaints, causes of action and debts of any kind and nature whatsoever, whether known and wherever and howsoever arising.

*Id.* ¶4.  The Defendants also agreed to execute a stock pledge agreement and to deliver the original stock certificates for H&H Development to CS Assets.

When the forbearance period expired on March 31, 2004, a substantial portion of the debt

remained due. On April 2, 2004, the principal of CS Assets, John Mosher, sent a letter to the stockholders of H&H Development and requested that they hold a stockholders' meeting. Mosher also sent a letter to the Defendant H&H Development's leasing agent, Arlington Properties, directing the agent to forward all rent proceeds directly to CS Assets.

In May 2004, Mosher required Hendricks to provide a detailed development plan of the Transportation Building project, including the budgets and schedules for the completion of the renovation. Mosher also required that two outside marketing consultants be permitted to analyze the project. The Defendants submitted a schedule and budget for the renovation to Mosher, but Mosher rejected them. In late May 2004, Mosher directed the tenants of the Transportation Building to vacate the building.

In July 2004, the Defendants sought to sell some of the condominium units individually. However, Mosher prevented the sales from going through by refusing to release his lien on the units until such time as the Defendants arranged for sales of several condominium units totaling no less that $1.2 million. These condominium units were not sold until October 15, 2004, after the instant suit had been filed. The sale of the units produced revenues of $1,154,000, which was applied toward the amount owed on the Renewal Note. CS Assets alleges that $1,107,089.22 remains owed on the note.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI*

*Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts

4

to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

# ANALYSIS

The Defendants argue that summary judgment should be denied based on eight affirmative defenses.  Each is addressed *seriatim*.

## I.      Failure to Qualify to Do Business in Alabama

In the Defendants' first affirmative defense, the Defendants argue that CS Assets is not qualified to bring this action under Alabama law because it failed, prior to the brining of this suit, to register to do business in the State of Alabama.  This argument is addressed and rejected in an Order denying the Defendants' motion to dismiss, which the Court has entered this same day.

## II.     Duress, Coercion, and Economic Duress

The Defendants' second affirmative defense is economic duress.  The elements of economic duress are defined as "(1) wrongful acts or threats; (2) financial distress caused by the wrongful actions or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." *Anderson v. Amberson*, 2004 WL 2201250, *6 (Ala. Civ. App. Oct. 1, 2004) (quoting *Int'l Paper Co. v. Whilden* 469 So.2d 560 (Ala. 1985)).

The Defendants argue that several of the Plaintiff's actions were wrongful.  They contend that CS Assets wrongfully directed that the Defendants' leasing agent forward all rents from the Transportation Building to CS Assets, that CS Assets wrongfully ordered the Transportation Building vacated, that CS Assets wrongfully compelled the Defendants to hire marketing consultants, and that CS Assets wrongfully forced the Defendants to accept CS Assets' renovation schedule and budget.  However, CS Assets was authorized to engage in all of these actions under the terms of the Defendants' mortgage.

Paragraph 23 of the Mortgage between H&H Development and Colonial Bank, which CS

Assets held through the December 23, 2003, assignment, provides that upon default CS Assets is authorized to:

> (i) "terminate automatically, without the necessity of taking any action, the license granted to the Mortgagor herein to collect rents;"
>
> (ii) "demand, collect, receive, sue for, attach and levy the Rents …";
>
> (iii) "take possession of, manage and operate the mortgaged property or any part thereof for the account of the Mortgagor, to make, modify, enforce, cancel or accept surrender of any Lease, remove and evict any lessee or sublessee, increase or reduce rents, decorate, clean and make repairs, perform remediation and otherwise do any act or incur any costs or expenses the Mortgagee shall deem proper to protect the security hereof, as fully and to the same extent as the Mortgagor could do if in possession …."

Mosher Aff., ex. G. These provisions provide ample authority for CS Assets' conduct following the expiration of the Forbearance Agreement. Accordingly, the Defendants have failed to show any evidence that CS Assets committed wrongful acts. To the extent that the Defendants' claim of duress is based on these specific actions by CS Assets, their claim of duress fails.

The Defendants also claim that CS Assets acted wrongfully when it sent letters to the shareholders of H&H Development requesting a shareholders' meeting. The Defendants assert that this act was wrongful because, under H&H Development's corporate by-laws, only directors are authorized to call meetings of the shareholders, and CS Assets was not a director. However, the Defendants fail to cite any authority for the proposition that requesting a meeting of shareholders in a manner inconsistent with a corporation's bylaws constitutes a wrongful act within the meaning of the first element of a duress defense. In any event, the second element of a duress defense requires a showing that the alleged wrongful act caused economic distress. The Defendants have failed to adduce any evidence that CS Assets' request for a shareholder's meeting caused any economic

distress whatever. Accordingly, the Defendants have failed to create a genuine dispute of fact as to a defense of duress.

### III.    Equitable Estoppel

The Defendants' third affirmative defense is based on the doctrine of equitable estoppel. The elements of equitable estoppel are:

> (1) That the person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;
> (2) That the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [t]he communication; and
> (3) That the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*Lambert v. Mail Handlers Benefit Plan*, 682 So.2d 61, 64 (Ala. 1996). The Defendants base their claim of estoppel on the fact that the Plaintiff initially "approved the project with release prices permitted for individual units" but later "require[d] 'minimum sales prices' with block or bulk condominium sales." Defendants' Response to Plaintiff's Motion for Summary Judgment at 9.

Regardless of whether the Defendants created an issue of fact as to the first element, the Defendants' claim of estoppel fails because they have failed to create any issue of fact as to the second element. The Defendants have adduced no evidence that they in any way altered their behavior in reliance on any representation made by the Plaintiff as to how the condominiums would be sold. Lacking evidence of reliance, the Defendants also cannot show that they will be materially harmed if the Plaintiff is permitted to "assert a claim inconsistent with [its] earlier conduct." Accordingly, the Defendants have failed to create a genuine issue of fact as to a defense of equitable estoppel.

**IV.    Laches**

In the fourth affirmative defense, the Defendants claim that the Plaintiff's collection on the Renewal Note is barred by the equitable doctrine of laches. "Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitation." *EEOC v. Dresser Indus. Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982). A claim of laches requires a showing of "inescusable delay and that the delay unduly prejudiced the Defendants." *Id.* As a threshold matter, the Defendants' claim of laches fails due to the presence of an applicable statute of limitations. Second, the Plaintiff brought this action within a few months of the Defendants' default on the Renewal Note following the expiration of the Forbearance Agreement. Thus, as a matter of law, the Defendants have failed to show any inexcusable delay on the Plaintiff's part.

**V.    Lack of Cooperation**

The Defendants' fifth affirmative defense is based on a theory of lack of cooperation. Lack of cooperation is an affirmative defense to a breach of contract based on one contracting party's breach of an implied duty to avoid hindering, preventing, or burdening another contracting party's performance of a contract. *See Eager Beaver Buick, Inc. v. Burt*, 503 So.2d 819, 822 (Ala. 1987). The Defendants argue that the Plaintiff breached its duty, contained in paragraph 9 of the Forbearance Agreement, to "in good faith assist in the condominium approval process." Mosher Aff., ex. I ¶ 9. The Defendants' claim of lack of cooperation fails, however, because the Defendants have failed to show that the Plaintiff engaged in any conduct that would tend to hinder, burden, or prevent the condominium approval process. Accordingly, the Defendants have failed to create a genuine issue of fact with respect to a failure to cooperate defense.

## VI. Failure to Mitigate Damages

The Defendants' sixth affirmative defense is based upon an allegation that the Plaintiff failed to mitigate its damages. "Generally, an injured party is required to mitigate his damages in a reasonable manner consistent with what an ordinary prudent person would do in similar circumstances. . . . A party may not recover for any part of his loss that was caused or increased by his failure to act reasonably." *Shelton v. Clements*, 834 So.2d 775, 783 (Ala. Civ. App. 2002).

The Defendants argue that the Plaintiff failed to act reasonably in refusing to permit the individual sale of condominium units until the proposed sales in combination would produce proceeds of $1.2 million dollars. However, the Defendants have failed to adduce any evidence showing either that the Plaintiff's conduct, though within the Plaintiff's authority under the mortgage note, was unreasonably exercised or that the conduct actually caused additional damages that could have been averted had the Plaintiff acted reasonably. Accordingly, the Defendants have failed to create a genuine issue of fact with respect to a failure to mitigate defense.

## VII. Unclean Hands

The Defendants' seventh affirmative defense is based on the doctrine of unclean hands. The first element of this defense requires the Defendants to show that the Plaintiff's wrongdoing is directly related to the claim that they are asserting. *See Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993). However, as explained above, the Defendants have failed to present evidence that the Plaintiff engaged in any conduct that was not expressly authorized by the Mortgage Note. Consequently, the Defendants have failed to show that the Plaintiff engaged in any wrongdoing which would satisfy the first element of an unclean hands defense. Moreover, the defense of unclean hands is available only where a party is seeking equitable relief. *See Boricky v.*

*Boricky*, 763 So.2d 265, 267 (Ala. Civ. App. 2000). Because the Plaintiff seeks only legal relief under a debt instrument that is in default, the defense of unclean hands is inapplicable. Accordingly, the Defendants have failed to show an genuine issue of material fact in relation to an unclean hands defense.

**VIII.   Undue Control and Excessive Interference**

The Defendants' final affirmative defense relates to undue control and excessive interference. The Defendants base this last defense on two theories: (1) *de facto* partnership or joint venture and (2) the so-called instrumentality doctrine.

First, the Defendants argue that the Plaintiff is not entitled to summary judgment because a question of fact exists as to whether the Plaintiff became so enmeshed or so excessively interfered with the Defendants' business that the Plaintiff should be held liable for the Defendants' debts. In support of this argument, the Defendants argue that the Plaintiff's conduct created a *de facto* partnership or joint venture with the Defendants. This argument is devoid of merit. The Plaintiff did not engage in any actions which were inconsistent with its relationship as the Defendants' secured creditor. The undisputed evidence shows that the Plaintiff's conduct was authorized by and entirely consistent with the Mortgage Note. On this ground alone, the Defendants' assertion of a *de facto* partnership or joint venture fails. *See Pinnacle Port Community Ass'n v. Orenstein*, 872 F.2d 1536, 1540 (11th Cir. 1989) (declining to find a joint venture where the lender's conduct was consistent with a lender attempting to protect its collateral).

Furthermore, the Plaintiff and the Defendants never entered into any agreement entitling the Plaintiff to profits or gross revenues from the renovation project, which is a requirement for a finding of an implied partnership or joint venture. *See Moore v. Merchants & Planters Bank*, 434 So.2d 751,

753 (Ala. 1983). Instead, the Plaintiff's sole stake in the project was to collect the debt contained in the Renewal Note. The Defendants therefore have failed to create a genuine issue of fact as to whether the Plaintiff became the Defendants' *de facto* partner and thereby excessively dominated the Defendants so as to become liable for the Defendants' debt.

Under the second theory advanced by the Defendants, they argue that the Plaintiff dominated the Defendants to such an extent that the Defendants became mere instrumentalities of the Plaintiff. The two elements of a defense under this instrumentality theory are (1) that the dominant corporation must have controlled the subservient corporation; and (2) that the dominant corporation must have proximately caused the plaintiff harm through misuse of this control. *See Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Co.*, 482 F.2d 1098, 1103 (5th Cir. 1973).[1] The Defendants' defense under an instrumentality theory fails because the Defendants have failed to present any evidence that the Plaintiff ever exercised control over any of the Defendant corporations. Although the Defendants did adduce evidence that, after April 2004, the Plaintiff exercised substantial control over the renovation of the Transportation Building, the Plaintiff had authority to exercise such control as the holder of the Mortgage Note. Control over the collateral to the Renewal Note, however, is distinct from control over the corporate Defendants themselves. The law in the Eleventh Circuit provides that "the control required for liability under the 'instrumentality' rule amounts to *the total domination of the subservient corporation* to the extent that the subservient corporation *manifests no separate corporate interests of its own* and functions solely to achieve the purposes of the dominant corporation." *Id.* at 1106 (emphases added).

---

[1] It is axiomatic that decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

The evidence is undisputed that throughout the period following the Defendants' default on the Renewal Note, the Defendants maintained separate existence, interests, and volition. Throughout this period, the Defendants kept separate counsel and attempted to negotiate an agreement with the Plaintiff regarding the sale of the condominium units. Indeed, when Mosher attempted to organize a meeting of the Defendant H&H Development's shareholders, his attempt failed. In sum, the Defendants have failed to create a genuine question of fact as to whether the Plaintiff so dominated any of the Defendant corporations so as to render them mere instrumentalities of the Plaintiff.

## IX.   The Defendant's Counterclaims and Third-Party Causes of Action

In their Answer (doc. 10), the Defendants alleged three counter- and third-party claims against the Plaintiff and against the two Third-Party Defendants. Count One alleged a breach of fiduciary duty and malicious conduct by the Plaintiff and Third-Party Defendants. Count Two alleged tortious interference. Count Three sought a permanent injunction releasing the Defendants from the Renewal Note.[2] During argument before the Court, counsel for the Defendants conceded that if the Court granted summary judgment to the Plaintiff, the Plaintiff and the Third-Party Defendants would be entitled to judgment on the Defendants' counter- and third-party claims. Consistent with that concession, the Court concludes that the Plaintiff and the Third-Party Defendants are entitled to judgment on Defendants' counter- and third-party claims against them.

---

[2] In Count Three, the Defendants also sought an injunction permitting the sell of certain condominium units free and clear of the Plaintiff's lien. As the units were sold in October, that claim for relief now is moot.

**CONCLUSION**

The Plaintiff's motion for summary judgment is due to be granted. The undisputed evidence demonstrates that the Plaintiff is entitled to summary judgment in the amount of $1,126,933.80,[3] plus attorney's fees and other costs related to bringing this action,[4] against each of the Defendants on its claim that the Defendants are in default of the Renewal Note. The Plaintiff and the Third-Party Defendants also are entitled to judgment on the three counter- and third-party claims brought by Defendants in their Answer and Third-Party Complaint. A separate order will be entered.

**DONE** and **ORDERED** this 10th day of January, 2005.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judg

---

[3] As of October 28, 2004, the Defendants owed $1,107,089.22 on the Renewal Note with prejudgement interest accruing at the rate of $268.17 a day. (Mosher Aff. ¶ 20). After including $19,844.58 in prejudgment interest that has accrued in the 74 days since the date of the affidavit, the total amount due in the judgment is $1,126,933.80.

[4] Attorney's fees and costs related to bringing this action are recoverable under paragraph 30 of the Mortgage. (Mosher Aff., ex. G ¶ 30.)